THE BALTICA INSURANCE COMPANY, Appellee, *vs.* PATRICK J. CARR, County Collector, Appellant.

*Opinion filed June 23, 1928.*

1. INSURANCE—*re-insurance is a contract of indemnity.* A contract of re-insurance is not a contract against loss by fire or other hazard provided in the original policy but is one against loss by or on account of an outstanding contract of insurance with the owner of property or simply a contract to indemnify the original insurer for a loss he may sustain upon his contract of insurance.

2. SAME—*foreign fire insurance company effecting re-insurance outside State is not liable for tax under section 30 of act of 1869.* A foreign fire insurance company authorized to transact business in Illinois is not required to pay the tax on net receipts provided in section 30 of the fire, marine and inland navigation insurance act of 1869, where the receipts consist of premiums on contracts of re-insurance effected outside the State and no property is insured and no receipts collected in Illinois and no agency is maintained for that purpose; and neither the acts of 1893 and of 1899 to prevent violation of the insurance laws, nor the act of 1919 requiring the payment of a two per cent privilege tax, can be interpreted as requiring such an insurance company to pay the tax under said section 30. (*People* v. *Barrett*, 309 Ill. 53, distinguished.)

3. TAXES—*doubtful statute will be construed against tax.* In construing a statute providing for the payment of a tax the language of the statute will not be extended beyond its clear import in order to subject particular property to the tax, and in case of doubt the statute will be construed most strongly against the State.

4. SAME—*equity may enjoin the collection of unauthorized tax.* Equity has jurisdiction to enjoin the collection of a tax where it has been levied without authority of law or where the property is not subject to taxation, as the right of appeal from a decision of the board of review is restricted to cases in which it is claimed that the property assessed is exempt from taxation.

APPEAL from the Superior Court of Cook county; the Hon. M. L. McKINLEY, Judge, presiding.

FRANCIS X. BUSCH, Corporation Counsel, ROBERT E. CROWE, State's Attorney, LEON HORNSTEIN, WILLIAM H. DUVAL, C. E. MORE, C. PAUL TALLMADGE, SAMUEL A. ETTELSON, and HARRIS F. WILLIAMS, (HIRAM T. GILBERT, of counsel,) for appellant.

HICKS & FOLONIE, and SILBER, ISAACS, SILBER & WOLEY, for appellee.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

This is an appeal from a decree of the superior court of Cook county finding that appellee, the Baltica Insurance Company, a corporation of the kingdom of Denmark, organized for the purpose of engaging in the business of insurance, has established the material allegations of its bill of complaint, and decreeing that appellant, Patrick J. Carr, as county treasurer and *ex-officio* county collector of Cook county, Illinois, be and is, and his deputies, clerks, agents and attorneys are, perpetually enjoined and restrained from demanding, receiving and collecting any taxes levied, assessed or spread on account of any net receipts of appellee for the year beginning May 1, 1922, and ending April 30, 1923, and from attempting in any manner to enforce the

payment of the same or any part thereof. There was a hearing before the chancellor upon the bill and the answer thereto by appellant and upon facts not controverted and established by stipulations of the parties, the testimony of one witness for appellant and certain exhibits offered by appellee.

The material facts are in substance the following: Appellee is a corporation existing under the laws of the kingdom of Denmark. It was licensed and authorized to transact business under the statutes of Illinois as a fire, marine and inland navigation insurance company. Prior to May 1, 1922, and from then to the time ending April 30, 1923, it was authorized to transact business in Illinois, and had, in accordance with the statutes of the State, done all things required of it, and had thereupon received a certificate from the Department of Insurance of Illinois authorizing it to transact business as such insurance company within the State. It designated the director of trade and commerce at Springfield, Illinois, as agent for service of process, and also designated James B. Tallman, with his office at 175 West Jackson boulevard, Chicago, as agent for the transaction of its authorized business of insurance. It maintained no office in the State of Illinois. The sole business conducted and transacted by it was that of re-insuring risks written by direct writing insurance companies in the State of Illinois. Such re-insurance was effected under treaties of re-insurance existing between it and other foreign insurance companies, whereby it, in consideration of payment to it of a specified portion of the premium on each risk, re-insured the liability of the direct writing company to the extent of such treaty of re-insurance upon risks assumed in the State of Illinois by such direct writing company or companies. None of such business of re-insurance was done within the State of Illinois. All of it was done by re-insurance "treaties," in writing, entered into outside the State of Illinois. All re-insurance premiums were paid

outside the State of Illinois, and all books and records were kept at the principal office of appellee in Newark, New Jersey, from which office all correspondence issued and all return premiums were paid. It entered into no contract to insure any property in Illinois. Tallman did not negotiate any contracts of re-insurance or other insurance in Illinois for appellee and knew nothing concerning such contracts by appellee. He did not execute for appellee any contract of any kind within the State. He did not collect any premium for appellee in Illinois. He paid out no money for appellee in refunding unearned premiums upon canceled re-insurance. He performed no act of any kind as agent of appellee. Appellee designated him as its agent for the transaction of its authorized business of insurance in Illinois, and caused him to be licensed as such agent in order that it might enter into re-insurance contracts with companies who were licensed to do business in Illinois and who did a direct writing insurance business in the State. Appellee had no other agent of any kind in Illinois. It had no property or funds of any kind within Illinois and had no bank account or deposit of money within the State. It did pay a privilege tax of two per cent of its gross premiums received outside of the State upon risks re-insured in the State under the Illinois act of 1919 for the right to come into the State and to transact business, if it so desired. It did file a statement showing the risks written and the premiums received therefor, the gross premiums received, the gross premiums refunded on canceled risks and net premiums received attributable to business written, and that said reports of net receipts so made and filed by appellee in Illinois were based entirely upon net receipts of re-insurance effected, as above set forth, upon Illinois risks directly written by other insurance companies.

It was the universal custom of the business of fire, marine and other property insurance for the direct writing insurer to protect itself against a part of its liability by re-

insuring such part that it did not desire to carry, and it was the sole business of appellee to engage in and furnish such re-insurance. The contract of re-insurance so effected was in all cases a contract of indemnity by the re-insuring company. The re-insured company retained its entire liability to the person insured, but by independent contract, to which the person insured was in nowise a party, re-insured a portion of its liability. Appellee made no return under section 30, hereinafter mentioned, to the board of assessors of Cook county of any net receipts for insurance or re-insurance transacted by it or by any agency of it in said county for the year beginning May 1, 1922, and ending April 30, 1923, but the various direct writing companies, a portion of whose direct writing business was re-insured by appellee, made returns to the taxing authorities of Cook county purporting to show the net receipts of their agencies required to be listed for taxation by section 30 of the act to incorporate and to govern fire, marine and inland navigation insurance companies doing business in the State of Illinois, passed in 1869 and amended in 1879. The board of assessors made no assessment, but the board of review of Cook county did make an assessment of $5000 for the year 1922 against appellee under section 30 against the protest of appellee to the effect that it was not liable for taxation thereunder, which protest was not considered by the board. Accordingly a tax of $375.50 was extended on the tax books of the county against appellee on the assessment.

Section 30 aforesaid, under which the assessment in this case is made, as amended in 1879, is in this language: "Every agent of any insurance company, incorporated by the authority of any other State or government, shall return to the proper officer of the county, town or municipality in which the agency is established, in the month of May, annually, the amount of the net receipts of such agency for the preceding year, which shall be entered on the tax lists

of the county, town and municipality, and subject to the same rate of taxation, for all purposes, State, county, town and municipal—that other personal property is subject to at the place where located; said tax to be in lieu of all town and municipal licenses; and all laws and parts of laws inconsistent herewith are hereby repealed: *Provided,* that the provisions of this section shall not be construed to prohibit cities having an organized fire department from levying a tax, or license fee, not exceeding two per cent in accordance with the provisions of their respective charters, on the gross receipts of such agency, to be applied exclusively to the support of the fire department of such city." (Laws of 1879, p. 179.)

One of the preliminary contentions made by appellant in this case is, that the tax under section 30 is a tax on the privilege of doing business in this State, and therefore is a valid tax. It has been definitely and finally determined by this court in *Hanover Fire Ins. Co.* v. *Harding,* 327 Ill. 590, that the tax on net receipts is a tax on personal property and is subject to reduction, debasement and equalization, the same as other personal property within the State. We do not consider that those contentions are in any way material to the real questions or issues in this case, and we therefore decline to further consider them at this time.

The only business that appellee transacted, so far as this record shows, was that of re-insurance. Re-insurance is a contract between the direct insurer and the re-insurer, by which the latter agrees to protect the former from risks already assumed. The insured, unless the contract so provides, has no concern with the contract of re-insurance, and the re-insurer is not liable to the insured either as surety or otherwise. The contract is not one of insurance but simply one of indemnity. It is not a contract against loss by fire or other hazard provided in the original policy, but is one against loss by or on account of an outstanding contract of insurance with the owner of property, or simply

a contract to indemnify the original insurer for a loss he may sustain upon his contract of insurance. (*Vial* v. *Norwich Fire Ins. Society,* 257 Ill. 355; *Weil* v. *Federal Ins. Co.* 264 id. 425; *Allison* v. *Fidelity Mutual Fire Ins. Co.* (Neb.) 116 N. W. 274.) In the case against the Fidelity Mutual Fire Insurance Company just cited, the Nebraska Supreme Court said: "It is apparent * * * that the contract of re-insurance is not to insure the owner of the property against its loss by fire or other casualty, but is a contract to indemnify another insurance company or insurer. Strictly speaking, it is purely a contract of indemnity, not against loss by fire or other hazards provided in the original policy, but against loss by or on account of an outstanding contract of insurance with the owner of the property. * * * It is a guarantee to reimburse him [the original insurer] for any sum he may be compelled to pay under a contract of insurance with the owner."

Under the stipulations in this case it is clear that appellee qualified as an insurance company to transact a fire, inland and marine insurance business in Illinois and did everything that was necessary for it to do to so qualify, including the payment of all fees and charges to the State for such privilege. It is also stipulated that appellee did not transact any such insurance business in Illinois, and that neither it nor its agents appointed in Illinois collected any premiums for such insurance. Therefore appellee can not be required to list the net receipts of such insurance business when there were no such receipts, and it cannot be taxed on net receipts for doing an insurance business in Illinois which it did not do. It certainly had the right to refrain from doing an insurance business in Illinois even though it was qualified and licensed to do such a business and had paid for the privilege of doing it.

The real question in the case is whether or not appellee, as a re-insurer of the character aforesaid, was under obligations to make a return to the proper officer of Cook

county of the amount of the net receipts of its re-insurance business for the year ending April 30, 1923, and to pay taxes to appellant on such net receipts, under the provisions of section 30. This question must necessarily be answered in the negative, for the reason that there is no provision of any statute in Illinois, so far as we are aware, making re-insurance companies liable for taxes on their net receipts, as are insurance companies under section 30. We have carefully examined our Illinois laws for the purpose of determining whether or not re-insurance companies are required to pay taxes on their net receipts, as is required of insurance companies under section 30, and the result of our investigation leads us to the conclusion that there is no such requirement of re-insurance companies. They are required to pay a privilege tax under the law approved June 28, 1919, entitled, "An act in relation to the taxation of non-resident corporations, companies and associations for the privilege of doing an insurance business in this State," (Laws of 1919, p. 628,) the first section of which provides as follows:

"Section 1. That each non-resident corporation, company and association licensed and admitted to do an insurance business in this State shall, except as herein otherwise provided, pay an annual State tax for the privilege of doing an insurance business in this State, equal to two percentum on the gross amount of premiums received during the preceding calendar year on contracts covering risks within this State, which gross amount of premiums shall include all premiums received during the preceding calendar year on all policies, annuity contracts, certificates, renewals, policies subsequently canceled, insurance and re-insurance executed, issued and delivered during such preceding calendar year, and all premiums that are received during such preceding calendar year on all policies, annuity contracts, certificates, renewals, policies subsequently canceled, insurance and re-insurance executed, issued and delivered in all years

prior to such preceding calendar year, whether such premiums were in the form of money, notes, credits or any other substitute for money, after deducting from such gross amount of premiums the amount of returned premiums on canceled policies covering risks within this State (but returns on life insurance policies, commonly known as surrender values, shall not be considered returned premiums on canceled policies); also the amount paid for re-insurance of risks within this State to companies duly licensed to transact business in this State, and also the amount returned to holders of policies on risks within this State as dividends, paid in cash or applied in the reduction of premiums.

"There shall be deducted from the tax thus computed the amount (if any) paid by such corporation, company or association, to cities and villages as a tax on premiums received by such corporation, company or association in such cities and villages during the preceding calendar year for the benefit of organized fire departments, and the remainder shall be assessed against such corporation, company or association as its annual privilege tax.

"This act shall apply to all corporations, companies, and associations organized under the laws of any other State, territory or foreign country and admitted to transact the business of insurance in this State on the stock, mutual, stock and mutual, or assessment plan. This act, however, shall not apply to fraternal beneficiary associations or societies.

"The tax herein provided for shall be in lieu of all license fees or privilege or occupation taxes levied or assessed by any municipality in this State, and no municipality shall impose any license fee or privilege or occupation tax upon any such corporation, company or association, or any of its agents, for the privilege of doing an insurance business therein; but this act shall not be construed to prohibit the levy and collection of any State, county or municipal taxes upon the real and personal property of such corporations,

companies and associations, nor to prohibit the levy and collection of taxes for the benefit of organized fire departments in cities and villages, nor to prevent the levy and collection of taxes for the purpose of maintaining the office of the fire marshal of this State and paying the expenses incident, nor to prevent the levy and collection of the tax authorized by section 30 of an act entitled, 'An act to incorporate and to govern fire, marine and inland navigation insurance companies doing business in the State of Illinois,' approved March 11, 1869, in force July 1, 1869, as amended."

Section 3 of the act provides that each insurance corporation, company and association subject to the provisions of section 1 shall, in addition to all other statements and reports required by law, make a report in writing to the Department of Trade and Commerce not later than the first day of August, 1919, and not later than the first day of March in each year thereafter, on such forms as said department may prescribe. The act then prescribes the form and indicates the manner in which the company shall make its report of its gross premiums collected, etc.

The provisions of section 1 make it clear what companies are required to pay the tax and provide that when such privilege tax is paid it shall be in lieu of all license fees or privilege or occupation taxes levied or assessed by any municipality in the State. Appellee was certainly liable for such privilege tax as a requisite to its doing business in Illinois, and so far as this case is concerned it may be conceded that it transacted business in Illinois as a re-insurance company in the manner already stated, as it has paid for the privilege of doing such re-insurance business, after first making its report to the Department of Trade and Commerce of the premiums collected on such re-insurance as required by said act.

In the absence of a statute positively requiring re-insurance companies to pay taxes on their net receipts we must

hold that appellee has discharged its full obligation and is not liable for a tax on its net receipts under section 30 or under the statute which we have just considered. The expression in the above statute that it shall not be construed "to prevent the levy and collection of the tax authorized by section 30 of an act entitled, 'An act to incorporate and to govern fire, marine and inland navigation insurance companies doing business in the State of Illinois,' " cannot be interpreted as requiring re-insurance companies, or insurance companies other than fire, marine and inland navigation insurance companies, to pay the tax on net receipts provided for in section 30. In *Fidelity Co.* v. *Board of Review,* 264 Ill. 11, it was held that the act of May 31, 1879, was not intended to subject casualty insurance companies and other insurance companies to the provisions of section 30 that had not already been subjected thereto by the Insurance act of 1869, of which section 30 is a part. The act of May 31, 1879, is entitled, "An act to compel all insurance companies of other States and countries, doing any kind of insurance business in this State, other than life, to comply with the general fire and marine insurance laws of this State, and to approve deposits of plate glass, accident and steam boiler insurance companies." The act provided that every insurance company, or association incorporated by or organized under the laws of any other State or any foreign government must comply with the requirements of the general insurance laws of this State governing fire, marine and inland navigation insurance companies doing business in the State of Illinois. Before it shall be lawful for such company or association to take risks or transact any kind of insurance business in this State other than that of life insurance, such companies or associations, and all persons acting as agents thereof, shall be subject to the same penalties prescribed therein for a violation of any of the provisions thereof, provided that no plate glass, accident or steam boiler insurance company shall be required

to have a larger capital than $100,000 actually paid up, nor shall any such company be authorized to transact business in this State without having previously deposited with the State Treasurer of this State, or with the chief financial officer or commissioner of insurance of the State where such company is organized, securities, duly assigned to such officers, in trust for the benefit of all its policy holders, the market value of which shall at all times be equal to $100,000. It was held in the *Fidelity Co. case, supra,* that under the provisions of said act the legislature was dealing only with the conditions upon which it would admit foreign insurance companies other than those doing fire, marine or inland navigation insurance to do business in this State, but that it was not intended by that act to subject them to all the provisions of the act of 1869, including section 30. It was there stated as a rule for construing such statutes, that the language of a statute will not be extended beyond its clear import in order to subject particular property to a tax, and that in case of doubt the statute will be construed most strongly against the State.

Appellant states, in substance, that in the case of *People v. Barrett,* 309 Ill. 53, it was made a distinct issue whether or not re-insurance companies doing business in this State are taxable upon their net receipts in the same manner under section 30 as fire, marine and inland insurance companies are taxed, and that this court held in that case that re-insurance companies are to be so taxed. This is a misapprehension as to what this court did hold in that case. An examination of that decision will disclose that this court approved the holding in *Fidelity Co. v. Board of Review, supra,* and distinctly held that insurance companies other than fire, marine and inland navigation insurance companies are not taxable under section 30. This court also held in the cases above cited that a re-insurance company doing a re-insurance business of the character which appellee did in Illinois was not an insurance company, and it

necessarily follows that before such re-insurance companies may be taxed as insurance companies are taxed under section 30 there must be a positive provision of our statutes to that effect.

Appellant relies on the provisions of two statutes of this State, one of which was approved June 22, 1893, and the other April 24, 1899, (Laws of 1893, p. 109; Laws of 1899, p. 253;) as authority for the claim that appellee is taxable on its net receipts as insurance companies are taxable under section 30. Sections 1 and 2 of the act approved June 22, 1893, are as follows:

"Section 1. That it shall be unlawful for any insurance company legally authorized to transact insurance business in the State of Illinois to write, place or cause to be written or placed any policy or contract for indemnity for insurance upon property situated or located in the State of Illinois except through legally authorized agents in the State of Illinois, and the writing, placing or causing to be placed any such policy of insurance is hereby declared to be a violation of the law providing for the payment of taxes by foreign insurance companies doing business in the State of Illinois as provided in section 30 of an act entitled 'An act to incorporate and govern fire, marine and inland navigation insurance companies doing business in the State of Illinois, approved and in force March 11, 1869.'

"Sec. 2. Any company violating the provisions of the first section of this act upon notice and satisfactory proof thereof being made to the Auditor of Public Accounts of the State of Illinois, shall have its authority to transact business in the State of Illinois revoked by the Auditor of Public Accounts for a period of not less than ninety days, and any insurance company whose license to do business in Illinois is so revoked by said auditor shall not be again permitted to do business in Illinois until all taxes and penalties due thereon shall have been paid, together with any expenses that may due (under) the provisions of this act to

the Auditor of Public Accounts of the State of Illinois, and such company shall only be re-authorized to transact business in the State of Illinois upon a complete compliance with the laws of this State governing fire, marine and in- land insurance companies."

The first three sections of the act approved April 24, 1899, are as follows:

"Section 1. That no fire insurance company authorized to do business in this State shall re-insure, dispose of by treaty, cede, pool, divide, or in any manner or form what- soever reduce any portion of its risk or liability, covering property located in whole or in part in this State, in or with any company, association, person or persons whether incor- porated or otherwise not authorized by law to do the busi- ness of fire insurance in this State.

"Sec. 2. No fire insurance company authorized to do business in this State shall re-insure, or assume as a re- insuring company, or otherwise, in any manner or form whatsoever, the whole or any part of any risk or liability, covering property located in whole or in part in this State, of or for any insurance company, association, person or persons, whether incorporated or not, not authorized by law to do fire insurance business in this State.

"Sec. 3. No fire insurance company authorized to do business in this State shall re-insure or assume as a re- insuring company, or otherwise in any manner or form whatsoever, the whole or any part of any risk or liability, covering property located in whole or in part in this State, of any insurance company, association, person or persons whether incorporated or not unless the risk or liability re- insured shall have been assumed in full accord with the pro- visions of the statutes of this State."

The penalty imposed on any fire insurance company, association, underwriter, person or persons, whether incor- porated or not, for violating any provision of this act, is provided for in sections 5 and 6 of the act, and the penalty

there provided is that the license of said party or corporation shall be revoked by the insurance superintendent for a period of fifteen months and until the affairs of said party or corporation have been investigated by such superintendent and positive proof found that said party or corporation has not since the date of revocation of the license violated any of the provisions of the statute of this State.

Neither of said statutes, under our rule of construing statutes imposing taxes or penalties, can be said to impose the liability upon appellee to pay taxes on its net receipts for re-insurance transacted by it in the State in the manner provided by section 30 with respect to fire, marine and inland insurance companies. Let it be conceded that appellee violated section 1 of the act of 1893 by not conducting its re-insurance business through its legally authorized agents in Illinois. The act simply declares that such a violation of the section is a violation by appellee of the law providing for the payment of taxes as provided in section 30, but the section does not declare that by reason of such violation appellee shall pay taxes on its net receipts as provided for insurance companies under section 30. In the second section it is simply declared that the effect of such violation by appellee of section 1 shall be to have its authority to transact business in Illinois revoked by the Auditor of Public Accounts for a period of not less than ninety days; and section 2 further provides that appellee will not again be permitted to do business in Illinois "until all taxes and penalties due thereon shall have been paid," and that it can only be re-authorized to transact business in Illinois upon a complete compliance with the laws of Illinois governing fire, marine and inland insurance companies. The utmost that can be said of this statute in favor of appellant's contention is, that for its violation appellee must either pay taxes upon its net receipts, as provided in section 30, or have its license to do business in Illinois forever revoked. Such provision does not impose a positive re-

quirement that appellee shall pay taxes on its net receipts for insurance in the manner provided in section 30, as it may escape such payment by suffering its license to do business in Illinois to be revoked for all time.

As to appellee, section 3 of the act of 1899 provides that in case it shall re-insure or assume as a re-insurance company the whole or any part of any risk or liability covering property located in whole or in part in Illinois it must assume such risk or liability in full accord with the provisions of the statutes of Illinois. It did not assume any interest or contract in full that it re-insured in Illinois. The penalty for its violation of the statute is the revocation of its license, but there is no positive provision that it shall pay the taxes in section 30 as a penalty for its violation of said statute or that it shall otherwise be liable under section 30.

Appellant makes the further contention that the bill for injunction should have been dismissed because the Revenue act provides a remedy at law by appeal to the State Tax Commission from the board of review and by appeal from the commission to this court. The right of appeal from a decision of the board of review is restricted to cases in which it is claimed that the property assessed is exempt from taxation. A distinction is recognized between such a case and one in which it is alleged that the tax is void. Equity has jurisdiction to enjoin the collection of a tax where it has been levied without authority of law or where the property is not subject to taxation. *Sanitary District* v. *Board of Review,* 258 Ill. 316; *St. Louis Bridge Co.* v. *Eisele,* 263 id. 50.

The decree of the superior court is affirmed.

*Decree affirmed.*