190 So.2d 617 (1966)
McDONOUGH CONSTRUCTION CORPORATION, and Frank P. Settecasi and Joseph R. Chillura, Doing Business As Settecasi and Chillura, a Partnership, Appellants,
v.
PAN AMERICAN SURETY COMPANY, a Florida Corporation Authorized to Transact an Insurance Business, and State of Florida, ex rel., J. Edwin Larson, State Treasurer and ex Officio Insurance Commissioner, Appellees.
No. H-418.
District Court of Appeal of Florida. First District.
October 11, 1966.
*618 Carlton, Fields, Ward, Emmanuel, Smith & Cutler, Ralph A. Marsicano, Tampa, and Mershon, Sawyer, Johnson, Dunwoody & Cole, Miami, for appellants.
Earl Faircloth, Atty. Gen., Robert J. Kelly, Asst. Atty. Gen., Walter E. Rountree, Gen. Counsel, Arthur E. Lewis, Tallahassee and Robert E. Gibson, St. Petersburg, for appellees.
RAWLS, Chief Judge.
The sole question on this appeal is whether the proceeds from a contract of reinsurance is payable to the reinsured's receiver for the benefit of its creditors or is payable to the insured who suffered the loss.
Pan American Surety Company, while actively engaged in the insurance and surety business, entered into a facultative reinsurance treaty with Southeast Title and Insurance Company. While this treaty was in effect Pan American became surety on two construction and performance bonds:

 1. Principal: Quality Paving Corp.
 Obligee: McDonough Construction Corp.
 2. Principal: L.E. Dyal Electric Co., Inc.
 Obligee: Settecasi and Chillura, a partnership.

Pursuant to the terms of the treaty Southeast was offered and it accepted reinsurance of a portion of the risks Pan American had assumed on these bonds. Thereafter the obligees sustained losses which are admittedly within the coverage of the bonds as to Pan American's liability. However, Pan American was found to be insolvent, and the Insurance Commissioner was appointed its Receiver.
The corporate obligee attempted to negotiate directly with Southeast as the reinsurer, and the partnership filed its claim in the receivership proceedings asserting a right superior to that of the Receiver in the proceeds of the reinsurance. The Receiver filed his amended petition for instruction on priorities of the claims of the two appellants, contending that any sums realized from Southeast [reinsurer] should be held for the benefit of all creditors. The trial judge agreed with the Receiver, hence this appeal.
Both parties agree that the general rule is that stated in O'Hare v. Pursell:[1]
"An ordinary contract of reinsurance, in the absence of provisions to the contrary, operates solely as between the reinsurer and the reinsured. It creates no privity *619 between the original insured and the reinsurer. The contract of insurance and the contract of reinsurance are totally distinct and unconnected. An ordinary contract of reinsurance is one of indemnity against loss, and no action will lie until the loss has been paid. Upon the insolvency of the insurer the proceeds of the reinsurance become assets to be distributed generally among the creditors, and the original insured has no equitable claim upon them. The liability of the reinsurer is solely and exclusively to the reinsured. Homan v. Employers Reinsurance Corporation, 345 Mo. 650, 136 S.W.2d 289, 127 A.L.R. 163; Strong v. Phoenix Ins. Co., 62 Mo. 289; Thomas v. Land, 225 Mo. App. 216, 30 S.W.2d 1035; Gantt v. American Cent. Ins. Co., 68 Mo. 503; 46 C.J.S. Insurance § 1232a. The reinsurer has no contractual obligation with the original insured and is not liable to him. Thompson, Reinsurance, 3d Ed., pp. 206, 266. In the absence of statutory restrictions, however, reinsurance contracts may be drafted in such a form as to create a liability on the part of the reinsurer not only to the reinsured primitive insurer but also in favor of the original insured. Homan, supra; Gillespie v. Federal Compress & Warehouse Co., 37 Tenn. App. 476, 265 S.W.2d 21; 46 C.J.S. Insurance § 1224a; Thompson, Reinsurance, 3d Ed., p. 267. * * * `Accordingly, where, in reinsuring risks for which policies are outstanding, reinsurer contracts with reinsured to assume the policies and to pay the holders thereof all such sums as reinsured may become liable to pay, the persons to whom these original policies are payable acquire a direct right of action against reinsurer, and may sue in their own names and recover on the contract of reinsurance.'"
Reinsurance has been defined as a contract that one insurer makes with another to protect the first insurer from a risk he has already assumed.[2] it is not a contract against loss by fire, accident or other hazard as provided in the original policy but is one against loss on account of an outstanding contract of insurance or a bond and thus is one to indemnify the original insurer for any loss it may sustain.[3] Only if the contract contains a clear written assumption of liability to the original insured can the policyholder bring suit against the reinsurer.[4]
The two Appellants here are not parties to the reinsurance agreement. They are not contending that their bonds contain any indication of any direct liability on the part of anyone other than Pan American. Instead they contend that the contract of reinsurance is more than a mere contract of indemnity, that it was made for the benefit of the obligees on the bonds, and that by it the reinsurer Southeast assumed the liability of Pan American so that the liability of Southeast may be directly enforced by the Appellants.
The contract to be construed here is a facultative reinsurance agreement between Pan American Surety Company and Southeast Title and Insurance Company whereby either party could offer to the other a specified portion of any risk already accepted by the offeror. The offeree could accept or reject, but if it accepted and became the reinsurer, it was liable for its share of all loss, interest, costs and expenses for which the reinsured would become liable in connection with the bond or policy. The agreement provided that claims were to be investigated, negotiated, settled or defended by the reinsured, and such action would be binding upon the reinsurer; *620 but in case of insolvency of the reinsured, this duty inured to the reinsurer and its action would be binding on the reinsured's receiver. The treaty provided that if the reinsured paid any loss in full, the reinsurer was required to make payment for its share of the loss, interest, costs and expenses directly to the reinsured; but if the reinsured notified the reinsurer of its intent to pay only its portion of any loss on a particular day, it could require the reinsurer to pay its share of the loss either to the original insured or to the reinsured, at the election of the reinsurer. Reinsurance under this agreement was always payable on the basis of the reinsured's liability under the bond or policy, without diminution because of the reinsured's insolvency. In case subrogation or salvage rights existed, the reinsurer would share with the reinsured to the extent that it participated in any loss. Which company was to be reimbursed first, depended upon the circumstances, and both were to share proportionately in the expenses incurred in obtaining salvage. The reinsured was prohibited from making any changes or alterations in any bond or policy except for certain minor changes and then only if "the Reinsurer's liability under any one bond is not increased beyond its legal qualifying limit." Either party could terminate reinsurance of any bond or policy but only if the bond or policy contained a valid provision for cancellation by the reinsured. The agreement concluded with a section which provided for a periodic accounting for all debts between Pan American and Southeast whether arising out of reinsurance transactions or otherwise.
By the terminology used in the treaty Southeast assumed a portion of Pan American's liability under the two bonds in question. Although the wording used might be construed to be more liberal than necessary for a contract of indemnity for the reinsured we read it as describing Southeast's limit of liability to Pan American on each risk. We cannot overlook the fact that the treaty makes no provision for payment to the insured except under certain circumstances related above and then only at the request of the reinsured and at the election of the reinsurer. It does not contain any words indicating an assumption by Southeast of any direct liability to the original insured; it does not guarantee the policies or bonds to the insured; and it does not authorize the insured to bring an action against the reinsurer. In fact it provides:
"This Agreement shall be deemed to comply with any law, whenever applicable, which provides that the Obligee or other beneficiary of the Bond shall have the right to maintain an action on such an agreement against the Reinsurer. The reinsurer, upon learning of any attempt to recover directly from it on account of a claim based upon the Bond, shall promptly notify the Reinsured at its Head Office, and the Reinsured shall take charge of such matters, subject to the provisions of Sections 8 and 9 hereof.
"If, in consequence of any such law or by reason of having executed an agreement by which the reinsurance is payable to the Obligee or other beneficiary of the Bond, the Reinsurer is required to pay an amount in excess of its proportion fixed by this Agreement, such excess shall be repaid by the Reinsured."
The Florida Statutes contain no such requirement. See Section 624.0409(3). We agree with the able trial judge who found that the inclusion of the above quoted section could only be motivated by consciousness of the fact that in the absence of some law granting such rights the obligees or insureds would not have the right to maintain any actions against the reinsurer.
The attention of this court has been directed to several cases reaching a contrary conclusion,[5] but we find that the wording of *621 this contract of reinsurance forecloses any intent on the part of the parties to draft an instrument primarily for the benefit of the insureds. Since it is lacking in any language which would clearly establish privity between these Appellants and Southeast, the judgment appealed is
Affirmed.
JOHNSON and SACK, JJ., concur.
NOTES
[1] O'Hare v. Pursell, 329 S.W.2d 614, 620 (Mo. 1959).
[2] Bethke v. Cosmopolitan Life Ins. Co., 262 Ill. App. 586 (1931).
[3] Baltica Insurance Co. v. Carr, 330 Ill. 608, 162 N.E. 178 (1928).
[4] See 103 A.L.R. 1488 and cases cited therein which allowed recovery by the policyholder against the reinsurer and which are clearly distinguishable from the instant case by the reinsurer's acts in issuing new policies, direct billing of the policyholders or making other direct contact with the original insureds.
[5] Hunt v. New Hampshire Fire Underwriters' Assn., 68 N.H. 305, 38 A. 145, 38 L.R.A. 514 (1895); Homan v. Employers Reinsurance Corp., 345 Mo. 650, 136 S.W.2d 289, 127 A.L.R. 163 (1939).