436 So.2d 1013 (1983)
CLARK AND COMPANY, INC., Appellant,
v.
The DEPARTMENT OF INSURANCE AS RECEIVER OF EASTERN INSURANCE COMPANY and the Florida Insurance Guaranty Association, Appellees.
No. AQ-186.
District Court of Appeal of Florida, First District.
August 5, 1983.
Rehearing Denied September 13, 1983.
*1014 Robert E. Gibson, Tallahassee, for appellant.
Dennis K. Threadgill and Robert E. Sheridan, Tallahassee, for appellee Dept. of Ins.
R. Lee Smith and Paul M. Harden, Jacksonville, for appellee Florida Ins. Guar. Ass'n.
ERVIN, Chief Judge.
Appellant, Clark and Company, Inc. (Clark), appeals from a final order denying its petition for priority in the distribution of reinsurance proceeds owed to Eastern Insurance Company (Eastern), an insolvent Florida insurer now in receivership, contending that it is entitled to a priority under any of three theories: (1) as a third-party beneficiary; (2) as an exception, recognized by this court, to the general rule regarding distribution of reinsurance proceeds; and (3) as an assignee. We disagree and affirm the lower court's order in its entirety.
Clark, a managing general insurance agency with its principal place of business in Texas, is engaged in the business of providing surplus lines coverage to Texas residents through out-of-state insurers not otherwise authorized to do business in that state. In 1980 Clark proposed to Eastern a business arrangement whereby Clark, not itself an insurer, would write insurance coverage in Texas, Louisiana and Oklahoma on Eastern's behalf. The arrangement was to be structured so as to give Clark substantial control over the day-to-day operations in order to provide it with maximum flexibility in writing the policies. In return, Eastern would receive a small percentage of the premiums generated by Clark. Finally, the arrangement contemplated that reinsurance treaties would be secured so that Eastern would retain only 10% of the risk on the policies written by Clark.[1] On July 15, 1980, Clark and Eastern entered into a management agreement detailing the duties, obligations and responsibilities of each party. On the same date, Eastern entered into three reinsurance treaties with a group of out-of-state reinsurers which, collectively, agreed to assume 90% of the risk on Eastern policies written by Clark, not a party to the treaties. Each treaty contained the following express provision regarding procedures to be followed in the event of Eastern's insolvency:
It is further agreed and understood that in the event of insolvency of the Company, the reinsurance shall be payable by the Reinsurer directly to the Company, or to its liquidator, receiver or statutory successor, except as provided by Section 315 of the New York Insurance Law or except (a) where the Agreement specifically provides another payee of such reinsurance in the event of the insolvency of the Company and (b) where the Reinsurer with the consent of the direct insured or insureds have assumed such policy obligations of the Company as direct obligations of the Reinsurer to the payees under such policies and in substitution for the obligations of the Company to such payees.
(emphasis supplied).
Clark and Eastern operated under their management agreement for approximately one year until Eastern found itself in a precarious financial position due to heavy losses sustained by it on policies written by Clark. On October 1, 1981, Eastern agreed to a bordereau agreement with Southeast Fire Insurance Company in which Southeast, a reinsurer, agreed to assume 100% of the risk on all Eastern policies written by Clark prior to that date. Later that month Eastern was placed in receivership by the Florida Department of Insurance.
Clark in the meantime had paid out some $250,000.00 in claims to Texas insureds on the assumption that it would be liable for such claims as the surplus lines agent for *1015 Eastern in that state. To ensure its reimbursement for that amount, Clark sought to establish its right to a priority over Eastern's other creditors in the distribution of reinsurance proceeds. After hearing extensive testimony and reviewing all relevant documents, the lower court found that Clark's asserted priority under a third-party beneficiary theory was negated by the clear and unambiguous language of the insolvency provisions of the reinsurance treaties.
In urging reversal of the lower court's order, Clark notes that the issue of priority of distribution of reinsurance proceeds has been addressed by this court on two prior occasions. In the first decision, McDonough Construction Corporation v. Pan American Surety Company, 190 So.2d 617 (Fla. 1st DCA 1966), we considered and rejected the argument of an insured that had contended it was entitled to a priority in the distribution of reinsurance proceeds as a third-party beneficiary to a reinsurance contract. In concluding that reinsurance proceeds must be paid to the insurer's receiver for the benefit of all creditors, we recognized the general rule relating to reinsurance contracts:
An ordinary contract of reinsurance, in the absence of provisions to the contrary, operates solely as between the reinsurer and the reinsured. It creates no privity between the original insured and the reinsurer... . Upon the insolvency of the insurer the proceeds of the reinsurance become assets to be distributed generally among the creditors, and the original insured has no equitable claim upon them. The liability of the reinsurer is solely and exclusively to the reinsured.
190 So.2d at 618-619 (emphasis supplied). Applying that rule, we concluded that the insured had no right to a priority in reinsurance proceeds over that of all other creditors of the insolvent insurer.
A similar issue was before the court in Mitchell v. State ex rel. Williams, 223 So.2d 792 (Fla. 1st DCA 1969), but in the context of a different factual situation. In Mitchell, an insured under a fire insurance policy suffered a loss of $333,030.66 as the result of a fire on its premises. Because a portion of the risk on the policy was the subject of reinsurance contracts, over $130,000.00 was paid by the reinsurers to the insurer for that loss. Before the money was paid to the insured, however, the insurer was placed in receivership. While recognizing that McDonough stood for the proposition that "reinsurance proceeds become assets to be distributed among the general creditors[,] and the original insured has no equitable claim upon them", we noted that other jurisdictions had declined to apply that rule in three instances:
(1) [W]here the reinsurer binds itself to the terms and conditions of the original contract; (2) where the reinsurer binds itself to assume complete liability for the original policies; and (3) where, by special agreement between the original insured and its insurer, reinsurance is made a condition of the original policy.
223 So.2d at 793. Because the reinsurance certificates in Mitchell contained express language evidencing the reinsurer's intent to bind itself to the terms and conditions of the original contract of insurance, we concluded that the first exception to the general rule should apply, thereby entitling the insured to a priority.
Clark first contends that this case is not controlled by McDonough because the reinsurance treaties involved are not "ordinary contract[s] of reinsurance", as defined by that opinion, because the treaties do not apply to all insurance contracts written by Eastern, but only to those policies written by Clark on behalf of Eastern. General principles relating to third-party beneficiary contracts, it contends, should instead govern. Alternatively, Clark urges that the Mitchell exception, applicable where a reinsurer "binds itself to the terms and conditions of the original [insurance] contract", is controlling and compels reversal.
In rejecting these contentions we first observe that both McDonough and Mitchell are factually distinguishable from this case in that, unlike the petitioners therein, Clark is not an insured. It is, instead, merely an agent entitled to write policies on behalf of Eastern in several western states. As such, it is not entitled to a priority under the principles recognized in either McDonough or Mitchell.
*1016 Assuming arguendo those cases might be applicable, reversal is still not required. To prevail under a third-party beneficiary theory, Clark must prove that the provisions of the reinsurance treaties "clearly show an intention primarily and directly to benefit" Clark. Security Mutual Casualty Co. v. Pacura, 402 So.2d 1266, 1267 (Fla. 3d DCA 1981) (emphasis supplied). Additionally, it must be shown that both parties to the reinsurance treaties intended that Clark be directly benefited therefrom  it is not sufficient to show that only one party, in this case Eastern, unilaterally intended that result. See Health Application Systems, Inc. v. Hartford Life & Accident Insurance Co., 381 So.2d 294, 298 (Fla. 1st DCA 1980); 11 Fla.Jur.2d Contracts § 153 (1979). As the lower court properly concluded, the insolvency provision, common to all three reinsurance treaties, negates any argument that Clark was to benefit directly from the treaties.
Similarly, the limited exception found in Mitchell cannot apply to entitle Clark to a priority in this case. That exception can only apply where the express language of the reinsurance contract binds the reinsurer to the terms and conditions of the original contract of insurance between the insured and the insurer. 223 So.2d at 794. Indeed, several commentators have suggested that the exception should not apply unless the reinsurer has actually agreed to assume direct liability to the insured under the terms and conditions of the original policy. See 13A Appleman, Insurance Law and Practice § 7694 (1976); 44 Am.Jur.2d Insurance § 1841 (Rev. ed. 1982); 30 Fla. Jur.2d Insurance § 475 (1981). Even a tortured interpretation of the reinsurance treaties in the case at bar would not suggest any intent on the part of the reinsurers to assume any direct liability to Clark; accordingly we find the Mitchell exception inapplicable.
Clark next contends it is entitled to a priority by virtue of an alleged assignment of Eastern's interest in the reinsurance proceeds to Clark. The sole basis of this assignment theory is a letter dated September 30, 1981 from Eastern to Intere Intermediaries, a Texas reinsurance broker, stating, "... Eastern Insurance Company does not object to you or your reinsurers remitting claims recoveries directly to Clark and Company on claims adjusted and paid by them." (emphasis supplied.) The Department of Insurance urges that we reject this theory, first, because the issue was never raised below and, second, because if the letter of September 30, 1981 is interpreted as an assignment, it would be necessarily void by operation of section 631.262, Florida Statutes, which creates a presumption that any such transfer made within six months of an insurer's placement in receivership is void and fraudulent. We agree with the Department that Clark has failed to preserve the issue of assignment for appellate review. See Bergen Brunswig Corp. v. State, Department of Health and Rehabilitative Services, 415 So.2d 765, 766 (Fla. 1st DCA 1982). Nevertheless, we observe that the above quoted language relied upon by Clark falls far short of expressing the requisite intent on the part of Eastern to transfer all of its interest in the reinsurance proceeds to Clark, the purported "assignee". See generally 4 Fla.Jur.2d Assignments §§ 1, 13 (1978).
Accordingly, the final order is AFFIRMED.
THOMPSON and WIGGINTON, JJ., concur.
NOTES
[1] The parties evidently originally contemplated an arrangement whereby Clark would write insurance on Eastern's behalf and Eastern would reinsure 100% of its risk under the policies. When informed by the Florida Department of Insurance that such a plan would run afoul of Florida's "anti-fronting statutes", Eastern agreed to retain 10% of the risk and to reinsure the remaining 90%.